Filed 2/24/26  Aqua Blue Construction v. Goshorn CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AQUA BLUE CONSTRUCTION, INC., et al., | B338632 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22CHCV00392) |
| v. | |
| JOHN GOSHORN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen P. Pfahler and Gary I. Micon, Judges.  Reversed and remanded.

Law Office of Kurt W. Kampe III and Kurt W. Kampe III for Plaintiffs and Appellants.

Law Office of Nate Cade and Nathanael P. Cade for Defendant and Respondent.

————————

The present appeal involves an order made pursuant to Code of Civil Procedure[1] section 1281.98, which permits consumers ordered to arbitration to return to court and obtain attorney fees and costs against a drafting party who does not timely pay arbitration fees. Here, plaintiffs Aqua Blue Construction, Inc. and Julien Britton (collectively, Aqua Blue) appeal the trial court's order pursuant to section 1281.98 lifting the arbitration stay, ordering the matter to proceed in the trial court, and awarding sanctions against them and in favor of defendant John Goshorn.

While this appeal was pending, the California Supreme Court decided *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310 (*Hohenshelt*), which held that under section 1281.98, the drafting party's nonpayment must be willful, grossly negligent, or fraudulent to result in forfeiture of their arbitral rights. (*Id.* at pp. 332–346.) Applying *Hohenshelt*, we reverse the trial court's order granting Goshorn's section 1281.98 motion because the court did not consider Aqua Blue's culpability. We remand to the trial court to re-examine the motion in light of *Hohenshelt*, including whether Aqua Blue's nonpayment was excusable.

## FACTUAL AND PROCEDURAL BACKGROUND

I.  **Aqua Blue's Complaint and Goshorn's Cross-Complaint**

In April 2021, Goshorn agreed to pay Aqua Blue $109,475 to construct a swimming pool, spa, and barbeque at his residence. Aqua Blue drafted the contract, which was signed by Goshorn

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

2

and Aqua Blue's owner, plaintiff Britton.  The contract included an arbitration clause stating that Goshorn and Aqua Blue agreed to arbitrate all disputes regarding the agreement and work performed by Aqua Blue.  The arbitration clause also stated: "Your agreement to this arbitration provision is voluntary."

In May 2022, Aqua Blue sued Goshorn for breach of contract, seeking $32,305 in damages plus interest and attorney fees.  Aqua Blue's form complaint alleged:  "Defendant failed to pay the remaining balance of $32,305 on construction of pool/spa after demand for payment.  Defendant failed to submit to binding arbitration pursuant to terms of contract.  Defendant committed fraud in executing contract."  The complaint further alleged: "Defendant John Goshorn executed change orders to the original pool/spa contract which caused the price of construction to increase.  Defendant John Goshorn knew the price of the pool/spa had increased because of the change orders and John Goshorn never intended to pay for the additional work and items provided under the change orders.  John Goshorn lied to Plaintiffs and stated he had arranged for financing to pay for additional costs of the change orders and the increase in price of construction when he in fact, did not arrange for additional financing as promised."

Goshorn generally denied the allegations and cross-complained for (1) declaratory relief, (2) breach of written contract, (3) fraud and deceit, (4) negligence, (5) contracting without a license, and (6) recovery on a contractor's license bond.  Goshorn claimed that Aqua Blue deviated from the agreed plans by expanding the size of the barbeque area and then submitted fraudulent change orders.  He alleged that Aqua Blue's work was unfinished and defective.

3

Aqua Blue demurred and moved to strike portions of the cross-complaint.

## II.    Motion to Compel Arbitration

In September 2022, Goshorn moved to compel arbitration based on the contract's arbitration clause.  Goshorn asserted that his counsel had requested Aqua Blue to stipulate to arbitration before he filed his answer, but Aqua Blue "refused to stipulate to arbitration unless Mr. Goshorn would agree to dismiss four of his six causes of action stated in the Cross-Complaint."  Due to this demand, the parties had not yet proceeded to arbitration.

Aqua Blue filed a limited opposition to the motion to compel arbitration.  Aqua Blue argued that the licensure issues Goshorn raised in his cross-complaint were not covered by the arbitration agreement.  Aqua Blue also argued the court should rule on its demurrer and motion to strike before sending the matter to arbitration.

After supplemental briefing, the trial court granted Goshorn's motion to compel arbitration.  The court concluded that Aqua Blue's licensure status was an essential factor in its ability to collect on the balance due and therefore the licensure issues were inextricable from the case.

## III.    Arbitration Proceedings

Aqua Blue rejected arbitrators suggested by Goshorn's counsel.  In late January 2023, Aqua Blue suggested three arbitrators, including retired Justice Richard Aldrich of JAMS,

and sent their fee schedules[2] to Goshorn.  Aqua Blue's counsel wrote:  "While each of these arbitrators would certainly cost a bit more, their experience and judicial knowledge would provide a solid foundation for a well-reasoned decision and ultimate outcome in this matter."  In February 2023, the parties agreed that Justice Aldrich would serve as the arbitrator.

On April 11, 2023, JAMS administrators determined that the arbitration was a "consumer arbitration," which under JAMS's rules "meant that Aqua Blue would pay the arbitration fees."[3]  JAMS's April 2023 letter stated that the JAMS Policy on Consumer Arbitration Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness (Minimum Standards) applied to the arbitration.  The letter explained, "The

---

[2]     Justice Aldrich's fee schedule indicated a rate of $900 per hour or $9,000 per day.  Aqua Blue also suggested Judge Gail A. Andler (Ret.) and Judge Ann Kough (Ret.) as potential arbitrators.  Their rates, respectively, were $12,500 and $15,000 per day.

[3]     We note that California law does not generally require the drafting party to bear the full cost of a consumer arbitration.  Section 1284.3 provides that a consumer cannot be forced to pay the opposing party's fees or costs if the consumer loses, and all fees and costs must be waived for an indigent consumer.  (§ 1284.3, subds. (a) & (b)(1).)  Although the statute does not require fees to be shifted to a nonconsumer, subdivision (b) of section 1284.3 expressly states that "Nothing in this section shall affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party."  Thus, California law does not limit the ability of private arbitration companies to impose fee-shifting rules in consumer arbitrations.

5

Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing. [¶] Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once he or she is appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly."

To the letter, JAMS attached the Minimum Standards, which stated in part: "With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration." The Minimum Standards further stated: "In California, the arbitration provision may not require the consumer to pay the fees and costs incurred by the opposing party if the consumer does not prevail."

Several days later, in an April 14, 2023 letter, Aqua Blue requested that Goshorn agree that the parties would comply with JAMS's determination of the applicability of the JAMS Consumer Minimum Standards, and that the arbitration would be conducted under the JAMS comprehensive arbitration rules and procedures. Aqua Blue's counsel noted that JAMS's intake division had made an initial determination that Goshorn was a consumer under the current rules and procedures, but said Aqua

6

Blue would have an opportunity to raise this issue with the arbitrator. Goshorn's counsel agreed that the JAMS rules applied and that Goshorn would comply with the JAMS's Consumer Minimum Standards determination.

On April 14, 2023, JAMS issued an invoice for $9,000, due upon receipt, to Aqua Blue; payment was required to continue the arbitration. After JAMS emailed about the unpaid invoice, Aqua Blue paid the invoice on May 16, 2023.

On June 13, 2023, the arbitrator held a preliminary management conference, set the hearing for December 4, 2023, and allocated 10 days to complete the hearing. On July 13, 2023, JAMS issued to Aqua Blue a retainer invoice for $30,000. On August 4, 2023, JAMS issued a further retainer invoice to Aqua Blue for $144,700, due upon receipt, based on the estimated ten-day hearing.

On September 5, 2023, Aqua Blue's counsel sent a letter to the JAMS case manager questioning the $144,700 invoice. Counsel asserted that the case would not take ten days to decide and that forcing a small company like Aqua Blue to arbitrate at such a cost was unconscionable. Aqua Blue stated: "Please advise how Aqua Blue may continue going forward in the JAMS arbitration, paying fees as they are incurred or if Aqua Blue needs to seek some other possible remedy either before the arbitrator at JAMS or with the Los Angeles Superior Court." Aqua Blue accused Goshorn and his counsel of engaging in "various deceptive tactics calculated to exponentially increase the cost of arbitration and associated attorney fees," including filing "inaccurate and misleading intake information with JAMS." Aqua Blue stated that Goshorn misrepresented to the arbitrator that it would take 12 to 15 days to adjudicate the case, allegedly

7

to inflate Aqua Blue's arbitrator's fees, even though Aqua Blue's past and pending motions would reduce the arbitration to approximately one and one-half days.

On September 11, 2023, Goshorn requested that JAMS suspend the arbitration because Aqua Blue refused to pay the retainer fee. On September 25, 2023, JAMS administratively stayed the arbitration and vacated the hearing dates.

## IV. Motions for Sanctions

In March 2024, Goshorn filed a motion for sanctions pursuant to section 1281.98, which provides that in consumer arbitrations, the drafting party's failure to timely pay arbitration fees is a material breach of contract, and the consumer may unilaterally elect to withdraw from the arbitration and bring a motion for recovery of arbitration fees, interest, and related attorney's fees. Goshorn asserted that Aqua Blue agreed to abide by JAMS's determination that the dispute was a consumer case; Aqua Blue was liable for the arbitration costs; and Aqua Blue materially breached the agreement by failing to timely pay the invoices. Goshorn sought $36,974.79 in fees and costs incurred during the abandoned arbitration proceeding. He also sought an order entering Aqua Blue's default on his cross-complaint or, in the alternative, an order striking Aqua Blue's complaint.

Aqua Blue opposed the motion, arguing that the dispute was not a consumer arbitration and thus Aqua Blue should not be solely responsible for the arbitration fees. Aqua Blue contended that Goshorn's failure to ask the trial court to make the consumer arbitration designation either at the pleading stage or in connection with the petition to compel arbitration waived the issue. Aqua Blue asserted there was no agreement by the

8

parties or a court order allowing JAMS to designate the matter as a consumer arbitration.

Aqua Blue also filed two motions, one seeking an order to show cause for contempt against Goshorn for violating the court's order to arbitrate, and the other seeking monetary sanctions. Aqua Blue argued that Goshorn violated the contract's arbitration clause and the court's order compelling arbitration by unilaterally terminating the arbitration.

## V.     Order Awarding Sanctions

In April 2024, the trial court granted Goshorn's motion, awarded sanctions against Aqua Blue, and denied Aqua Blue's motions. In its minute order, the trial court expressly relied on two Court of Appeal decisions—*Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319 and *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054 (*Williams*)—that since have been overruled by *Hohenshelt*. The trial court quoted *Williams* at page 1075, stating: " 'To further [the statutory scheme's] purpose, the Legislature in enacting section 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment. It is within the Legislature's purview to make a civil remedy available as a matter of policy, without regard to fault.' " The court expressly held that pursuant to these now-overruled cases, "Aqua Blue was required to pay those fees on time even though it challenged the consumer arbitration designation."

The court explained: "Once Aqua Blue was more than 30 days beyond the due date of the last JAMS invoice, it was in material breach of the arbitration agreement, giving Goshorn the unilateral right to withdraw from arbitration and ask the court to terminate that proceeding. [Citations.] The arbitrator could not

9

extend the payment deadline without Goshorn's agreement and therefore could not cure the default. [Citation.] Even if Aqua Blue had a good faith basis for challenging the invoice, believing it was inflated due to the assertedly improper consumer arbitration designation, that belief did not relieve it of its obligation to continue paying the arbitration fees, or of the statutorily mandated consequences of not doing so, until its challenge to that designation was resolved."

The court then imposed monetary sanctions in an amount supported by Goshorn's counsel's declarations. However, the trial court declined to impose evidentiary, terminating, or contempt sanctions, stating: "[T]he law is unclear as to who decides whether a consumer arbitration designation is appropriate, or how to challenge that designation. Aqua Blue did not refuse to pay the arbitration fees at all. It asked JAMS for guidance as to how to challenge the designation, and, according to [Aqua Blue's counsel], had JAMS decided the issue against Aqua Blue, he would have then come to court to challenge that finding. [Citation.] On this record, therefore, the court finds that the imposition of evidentiary or terminating sanctions would be unjust."

The court denied Aqua Blue's motions for sanctions and a contempt order, concluding that Goshorn's withdrawal from arbitration and motion for a court order terminating arbitration were proper. The trial court vacated its order granting the petition to compel arbitration, lifted the arbitration stay, and ordered the matter to proceed in the trial court. The court awarded sanctions in the sum of $36,974.79, payable to Goshorn's counsel within 60 days.

In May 2024, the trial court entered a nunc pro tunc order correcting the sanctions order to indicate that plaintiff Julien Britton, and not his counsel, was a party (in addition to Aqua Blue Construction, Inc.) against whom the sanctions were awarded.

## DISCUSSION

Aqua Blue argues that we should reverse the trial court's order because this was not a consumer arbitration, and in any event, its nonpayment of the arbitration fees was excusable since the arbitration became cost prohibitive.  For the reasons explained below, we reverse the order and remand for the trial court to reconsider Goshorn's motion in light of the Supreme Court's recent ruling in *Hohenshelt*.

## I.    Applicable Law

"In 2019, the Legislature passed Senate Bill No. 707 (2019–2020 Reg. Sess.) (Senate Bill [No.] 707) . . . in response to 'a concerning and troubling trend' in consumer and employment arbitrations: 'employers are refusing to pay required fees to initiate arbitration, effectively stymieing the ability of employees to assert their legal rights.'  [Citations.]  The Legislature noted instances in which companies, having drafted and enforced waivers of class proceedings in employment contracts, faced large numbers of individual arbitration demands and then failed to timely pay arbitration fees, thereby frustrating adjudication of employees' claims." (*Hohenshelt*, *supra*, 18 Cal.5th at p. 329.) The addition of section 1281.98 to the California Arbitration Act (CAA) was intended to provide the employees and consumers a way out of this " 'procedural limbo' " or " 'procedural purgatory.' "

11

(*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1076.)

Section 1281.98, subdivision (a)(1) states:  "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach."

Subdivision (b) of the statute provides a remedy for the drafting party's material breach.  It states that the consumer may, among other things, unilaterally "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" (§ 1281.98, subd. (b)(1)) and "bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding.  The recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration."  (§ 1281.98, subd. (c)(1).)

Section 1281.99, subdivision (a) states:  "The court shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of Section 1281.97 or subdivision (a) of Section 1281.98, by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach."

Section 1281.99, subdivision (b) further empowers the trial court to impose evidentiary, terminating, contempt, and other sanctions unless the court finds that the breaching party acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

In *Hohenshelt, supra*, 18 Cal.5th at pages 322 to 323, our Supreme Court considered whether the Federal Arbitration Act (FAA) preempted section 1281.98 if it were construed to mandate forfeiture of arbitral rights despite an inadvertent or excusable failure to pay arbitration fees within the statute's 30-day deadline. In general, the FAA allows courts to invalidate an arbitration agreement based on generally applicable contract defenses (e.g. unconscionability) but preempts state laws that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. (*Id.* at p. 327.) Since section 1281.98's plain language purports to make waiver of the right to arbitrate a consequence of nonpayment alone (*Hohenshelt*, at p. 331), it appeared to be in conflict with the FAA.

To avoid preemption by the FAA, *Hohenshelt* interpreted section 1281.98 to make any waiver contingent upon a showing of culpability. The Supreme Court held that the statute's language mandates forfeiture of arbitral rights only when nonpayment was "willful, grossly negligent, or fraudulent." (*Hohenshelt, supra*, 18 Cal.5th at pp. 332–346.) In reaching this conclusion, the court relied on the long-standing principle that "one party's nonperformance of an obligation automatically extinguishes the other party's contractual duties only when nonperformance is willful, grossly negligent, or fraudulent." (*Id.* at p. 323.) The court pointed out this principle is embodied by statutes that permit relief from forfeiture, like Civil Code section 3275, which

13

excuses nonperformance upon full compensation absent gross negligence, willfulness, or fraud (*Hohenshelt*, at p. 332), and section 473, subdivision (b), which relieves a drafting party from forfeiture of arbitral rights due to late fee payment (*Hohenshelt*, at pp. 334–335).  Furthermore, this interpretation was also consistent with the Legislature's objective of deterring companies from "engaging in *strategic* nonpayment of arbitration fees."  (*Id.* at p. 323.)

As to the disposition, the *Hohenshelt* court remanded the matter to the trial court to assess whether the breaching party could be excused for its failure to timely pay the arbitration fees as the trial court had not previously made findings regarding the breaching party's culpability.  (*Hohenshelt*, *supra*, 18 Cal.5th at p. 349.)

Since the *Hohenshelt* ruling, Division One of the Second District Court of Appeal has reversed an order awarding the employee attorney's fees and costs where the employer initiated an electronic bill payment on the 30th day (a Friday), but the payment was not processed and received by the arbitration provider until the next Monday, after the 30-day deadline. (*Wilson v. Tap Worldwide, LLC* (2025) 114 Cal.App.5th 1077, 1091 (*Wilson*).)  The trial court made factual findings that the employer timely initiated the payment of arbitration fees but, because of a processing delay, the arbitration provider received the payment after the deadline expired.  (*Id.* at pp. 1089–1090.) Reversing the order, the court held as a matter of law that "these uncontested findings fail to establish defendant's untimely payment was strategic, willful, grossly negligent, or fraudulent." (*Id.* at p. 1090.)

With these holdings in mind, we turn to the case at bar.

## II. This Case Involves a Consumer Arbitration

Aqua Blue contends this is not a consumer arbitration because the arbitration provision was voluntary. Although Aqua Blue frames this in the context of JAMS's characterization of the case as a consumer arbitration and related allocation of fees, we must address this as a threshold issue since section 1281.98 applies specifically to consumer arbitrations.

We review this issue of statutory construction de novo. (See *Law Office of Carlos R. Perez v. Whittier Union High School Dist.* (2023) 87 Cal.App.5th 463, 470 [de novo review applies to questions of statutory construction].) When we interpret a statute, our task " 'is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.)

The CAA defines " '[c]onsumer' " as "an individual who seeks, uses, or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." (§ 1280, subd. (c).) Although "arbitration" is not explicitly defined by the CAA, it is clear from the statutory scheme that arbitration is a method of resolving a controversy with a neutral decisionmaker

either selected by the parties or appointed by the court.  (§§ 1280, subds. (e), (g) & (h), 1282.)

Applying these definitions, Goshorn plainly qualifies as a consumer under the CAA.  (§ 1280.)  Goshorn used Aqua Blue's services to build a pool at his home—a service that was personal and for his household.  The controversy arises directly from Goshorn's transaction with Aqua Blue and from the contract governing Aqua Blue's provision of construction services.

In addition, the CAA defines " 'Drafting party' " as "the company or business that included a predispute arbitration provision in a contract with a consumer or employee."  (§ 1280, subd. (e).)   Aqua Blue drafted the contract and included the predispute arbitration provision at issue.  This is the very type of arbitration that section 1281.98 seeks to address as it discusses the rights of the consumer and the drafting party.

Therefore, under the plain meaning of the CAA, we conclude the case at bar is a consumer arbitration.  The parties' relationship, the nature of the services provided, and the origin of the dispute all fall squarely within the CAA's consumer-protection provisions.

The only authority provided by Aqua Blue for the proposition that this is not a consumer case is the California Rules of Court governing ethical standards for neutral arbitrators in contractual arbitration.  Standard 2(d) states that " '[c]onsumer arbitration' means an arbitration conducted under a predispute arbitration provision contained in a contract" where, among other things, the "consumer party was required to accept the arbitration provision in the contract."  Aqua Blue argues that because the present contract states, " 'Your agreement to this

arbitration provision is voluntary,' " it is not a consumer arbitration under section 1281.98.

We disagree and adopt the analysis of the Sixth District Court of Appeal, which addressed this very argument in *Williams, supra*, 86 Cal.App.5th 1054.[4]  Like Aqua Blue here, the drafting party in *Williams* argued that because the arbitration provision was voluntary, the case did not involve a consumer arbitration.  The *Williams* court rejected that contention, stating:

"[The drafting party] argues that its preferred definition of 'consumer arbitration' is consistent with the definition of that term in the California Rules of Court governing ethical standards for neutral arbitrators in contractual arbitration, which limit the scope of that term to situations where the consumer was required to accept the arbitration provision.  (See *Speier v. The Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 149, fn. 4 [citing definition]; *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 954, fn. 6 [same].)  But [the drafting party] has given us no reason to believe that the Legislature intended to appropriate this definition of 'consumer arbitration' for use in section 1281.98. The purpose for which the defined term 'consumer arbitration' as used in the ethical standards is to delineate the cases in which certain disclosures are required.  (See *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 922–924; Cal. Rules

---

[4]     The *Williams* decision was overruled by *Hohenshelt, supra*, 18 Cal.5th at page 349 because the *Williams* court failed to consider whether the drafting party's failure to pay was excusable.  The Supreme Court did not, however, disturb *Williams*'s analysis regarding whether a voluntary arbitration provision removes the matter from the scope of consumer arbitration.

17

of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration, Stds. (2), (7)–(8) & (12).) If the Legislature had intended to use an expressly narrowed definition of the term applicable in the specialized context of ethical standards governing the single issue of disclosure, the Legislature would likewise have defined the term. (See *De Vries* [*v. Regents of University of California* (2016)] 6 Cal.App.5th [574,] 590–591; *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2019) 42 Cal.App.5th 148, 154.)

"We acknowledge that the Legislature declared that strategically failing to pay arbitration fees and costs, which 'severely prejudice the ability of employees or consumers to vindicate their rights[,] . . . is *particularly* problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.' (Stats. 2019, ch. 870, § 1, subd. (d), italics added.) But the Legislature did not declare that the strategic delay of arbitration through nonpayment of fees and costs is 'only' problematic and unfair where it is achieved by the party that imposed the arbitration obligation predispute. That an abusive practice is more acutely prejudicial in the context of a mandatory predispute agreement than a voluntary one does not detract from the Legislature's broader purposes. To adopt [the drafting party]'s position would be graft onto section 1281.98 an exception that lacks any textual support to permit a practice that the Legislature determined was problematic and unfair." (*Williams*, *supra*, 86 Cal.App.5th at pp. 1073–1074.)

Based on the foregoing, we conclude that this is a consumer arbitration and thus section 1281.98 applies.

18

## III. The Trial Court Did Not Consider Aqua Blue's Culpability in its Ruling

It is clear from the record before us that the trial court did not evaluate Aqua Blue's culpability for failing to pay the arbitration fees on time. The court reasoned: "Once Aqua Blue was more than 30 days beyond the due date of the last JAMS invoice, it was in material breach of the arbitration agreement, giving Goshorn the unilateral right to withdraw from arbitration and ask the court to terminate that proceeding. [Citations.] . . . Even if Aqua Blue had a good faith basis for challenging the invoice, believing it was inflated due to the assertedly improper consumer arbitration designation, that belief did not relieve it of its obligation to continue paying the arbitration fees, or of the statutorily mandated consequences of not doing so, until its challenge to that designation was resolved."

Here, the trial court simply imposed sanctions pursuant to now-overruled cases that strictly interpreted section 1281.98 to impose sanctions regardless of why the breaching party failed to pay the arbitration fees. Based on our high court's decision in *Hohenshelt*, which requires courts to evaluate whether the nonpayment was willful, fraudulent, or grossly negligent, this was clearly error.

We also conclude that based on the record before us, the matter must be remanded to the trial court because there is an unanswered question of fact as to Aqua Blue's culpability in failing to make the payment. Aqua Blue argues that pursuant to

19

*Hohenshelt*,[5] sanctions should not have been imposed because there is no evidence that Aqua Blue withheld payment as a strategic decision to avoid arbitration, and there is evidence that it failed to pay because it could not afford to do so. Aqua Blue contends it "diligently sought review [by the arbitrator] of the [case manager's] erroneous determination [that Aqua Blue was to pay all of the arbitration fees] . . . . The JAMS Designation Letter promised such review would be available, but despite requests by [Aqua Blue], no hearing on this request was ever set. In the meantime, JAMS required [Aqua Blue] to pay $164,000 in fees to [avoid] default. [Aqua Blue] could not comply, [and it was] no better off financially than the so-called consumer. . . . Even if it had been, [Aqua Blue] would have to be fanatics or lunatics to pay that much for a $32,305 case. No party, of any size, would choose such dispute resolution of so small a case, if this had been all known upfront." (Fn. omitted.)[6]

On the other hand, Goshorn argues that Aqua Blue understood the costs of this arbitration and intentionally sought an arbitrator who was more expensive (charging $9,000 per day)

---

[5]     Although Aqua Blue did not have an opportunity to brief *Hohenshelt* in its opening brief, it did brief the case extensively in its reply brief, as did Goshorn in his respondent's brief.

[6]     Because it is not properly before us, we do not address Aqua Blue's contention that JAMS's rule requiring the non-consumer to pay arbitration fees "controverts and undermines the FAA" and California law. That said, we note that the California statute addressing consumer arbitration fees expressly states it does not "affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party." (§ 1284.3, subd. (b).)

than the one Goshorn had suggested.  Goshorn argues it is "meritless—and likely frivolous—for [Aqua Blue] to claim that [it] could not possibly foresee the costs of arbitration when [it] shared Justice Aldrich's fee schedule with [Goshorn] in January, agreed to arbitrate with JAMS and Justice Aldrich in April, and further confirmed [its] agreement on June 29 by paying the June 20th invoice without objection."  Goshorn also contends the 10-day hearing estimate was reasonable and unsurprising because "each side asserted affirmative claims and would require multiple percipient witnesses as well as expert testimony.  This dispute involves a construction project that spanned the course of several months, involved dozens if not hundreds of written communications including text messages and emails, multiple disputed purported change orders, multiple construction defects implicating the work of Appellants and at least half a dozen subcontractors who could all be compelled [to] testify, and licensure issues."

We agree there is evidence in the record to support both sides' arguments regarding Aqua Blue's culpability in failing to pay arbitration fees.  As the trial court did not make any factual findings from which we could conclude as a matter of law that the nonpayment of arbitration fees was done in good faith rather than as a strategic maneuver, we must remand for the trial court to consider Goshorn's motion anew in light of *Hohenshelt*.  (Compare *Wilson*, *supra*, 114 Cal.App.5th at p. 1088 ["[W]e conclude remand is unnecessary here because unlike in *Hohenshelt*, the trial court's findings establish, as a matter of

law, that defendant's untimely payment was not willful, grossly negligent, or fraudulent."].)[7]

Finally, we note that shortly after the Supreme Court issued its decision in *Hohenshelt*, Goshorn's counsel offered prior to filing the respondent's brief to stipulate to vacate the orders awarding sanctions.  As Goshorn offered the very relief we afford Aqua Blue on appeal, in the interests of justice each side shall bear their own costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(5).)

---

[7]    Plaintiff Britton also argues, "Since it was Aqua Blue that signed as the contracting party agreeing to arbitration, Britton cannot be compelled to arbitrate or sanctioned for not paying fees, which are directed to the contracting party."  Britton did not make these arguments in his opposition to Goshorn's motion for sanctions or even in his opposition to the motion to compel arbitration.  "[A]s a general rule, an appellate court does not consider claims of error that could have been, but were not, raised in the trial court."  (*In re Marriage of R.K. & G.K.* (2025) 113 Cal.App.5th 14, 17.)  We therefore do not address this contention.

## DISPOSITION

The order is reversed and remanded for the trial court to determine whether Aqua Blue has waived its right to arbitrate under the standard articulated in *Hohenshelt*. Each party shall bear their own appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.